**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Gordii Grigorii,<br><br>                   Petitioner,<br><br>v.<br><br>Warden, San Luis Regional Detention Center, et al.,<br><br>                  Respondents. | No. CV 26-01852 PHX KML (CDB)<br><br>**REPORT AND RECOMMENDATION**<br>**A 208 048 541** |

**TO THE HONORABLE KRISSA M. LANHAM:**

Petitioner, who proceeds pro se, seeks relief pursuant to 28 U.S.C. § 2241. Petitioner is currently detained at the San Luis Regional Detention Center and he contends his detention is unlawful and in violation of his right to due process of law. Respondents have answered the petition and Petitioner has not filed a reply within the time allowed by the Court. Accordingly, the petition is ready for the Court's review.

**I.      Background**

Petitioner is a native and citizen of Russia. (ECF No. 1 at 4). Petitioner has been detained by the Department of Homeland Security since November 23, 2024, when he entered the United States at the Calexico, California, port of entry during an appointment scheduled via the CPB One app. (ECF No. 1 at 5, 34). Upon inspection Petitioner was issued a Notice to Appear, finding him to be subject to removal pursuant to § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), because he was not in possession of a visa or other valid entry document and a document of "identity and

nationality" such as passport. (ECF No. 1 at 29, 32). Petitioner was ordered to appear in immigration court on December 11, 2024. (*Id.*).

It is not clear from the record whether the hearing scheduled for December 11, 2024, occurred, or if it occurred what transpired. However, it appears that at some point subsequent to his detention Petitioner stated a credible fear of persecution if returned to Russia and he filed an application for asylum and withholding of removal.

An order of the immigration judge dated July 29, 2025, states:

☑ This is a summary of the oral decision entered on 07/29/2025. The oral decision in this case is the official opinion, and the immigration court issued this summary for the convenience of the parties.
☐ Both parties waived the issuance of a formal oral decision in this proceeding.
I. Removability
The immigration court found Respondent ☐ removable ☑ inadmissible under the following Section(s) of the Immigration and Nationality Act (INA or Act): 212(a)(07)(A)(i)(I)

***

II. Applications for Relief
Respondent's application for:
A. Asylum/Withholding/Convention Against Torture
☑Asylum was ☐ granted ☑ denied
☐ withdrawn with prejudice ☐ withdrawn without prejudice
☑Withholding of Removal under INA§ 24l(b)(3) was ☐granted ☑denied
☐ withdrawn with prejudice ☐ withdrawn without prejudice
☑Withholding of Removal under the Convention Against Torture was ☐ granted ☑ denied
☐ withdrawn with prejudice ☐withdrawn without prejudice

***

IV. Removal
☑ Respondent was ordered removed to Russia

(ECF No. 1 at 24-26). Petitioner appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA"). (ECF No. 1 at 27). The appeal was docketed on August 28, 2025, and fully briefed as of December 9, 2025. *See* https://acis.eoir.justice.gov/en/caseInformation, last visited May 6, 2026.

## II.     Claims for Relief

In his § 2241 action, filed March 18, 2026, Petitioner asserts his continued detention violates his right to Fifth Amendment right to due process. Respondents assert that because the order of removal is on appeal, and therefore not final, Petitioner's detention is mandatory and he is not entitled to a bond hearing or release on any basis, citing 8 U.S.C. § 1225(b)(2)(A). (ECF No. 9 at 2). Respondents argue "that such detention is not unconstitutionally indefinite," and that "the statute and applicable regulations require Petitioner's detention without bond through the completion of their removal proceedings." (ECF No. 9 at 3). Citing *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139 (2022), Respondents also contend: "Petitioner's claim to procedural due process rights must fail because she [sic] is considered legally not to have entered the United States, even though she [sic] is physically present here." (ECF No. 9 at 5).

## III.    Analysis

The United States Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). The right to be free from physical restraint is "at the heart of the liberty" guaranteed by the Due Process Clause of the Fifth Amendment. *E.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Although "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process," such detention must still comport with the detainee's right to due process. *Demore v. Kim*, 538 U.S. 510, 523 (2003). *See also Wong Wing v. United States*, 163 U.S. 228, 235-37 (1896).The right to be free from physical restraint is "at the heart of the liberty" guaranteed by the Due Process Clause of the Fifth Amendment. *E.g.*, *Zadvydas*, 533 U.S. at 690.

With regard to Respondents' assertion that the Petitioner has no constitutional right to due process because he has not "entered" the United States as that term is defined by federal immigration statutes and decisions interpreting those statutes, in the dissent in *Jennings v. Rodriguez*, 583 U.S. 281, 299-308 (2018), Justice Breyer eloquently argued

the indefensibility of allowing prolonged, unconsidered detention of noncitizens under the doctrine of what is often referred to as the "entry fiction," as follows.

> It is clear that the Fifth Amendment's protections extend to "all persons within the territory of the United States." ... But the Government suggests that those protections do not apply to asylum seekers or other arriving aliens *because the law treats arriving aliens as if they had never entered the United States; hence they are not held within its territory*.
>
> This last-mentioned statement is, of course, false. All of these noncitizens are held within the territory of the United States at an immigration detention facility. ... At most one might say that they are "constructively" held outside the United States: the word "constructive" signaling that we indulge in a "legal fiction," shutting our eyes to the truth. But once we admit to uttering a legal fiction, we highlight, we do not answer, the relevant question: *Why* should we engage in this legal fiction here?
>
> The legal answer to this question is clear. We cannot here engage in this legal fiction. No one can claim, nor since the time of slavery has anyone to my knowledge successfully claimed, that persons held within the United States are totally without constitutional protection. Whatever the fiction, would the Constitution leave the Government free to starve, beat, or lash those held within our boundaries? If not, then, whatever the fiction, how can the Constitution authorize the Government to imprison arbitrarily those who, whatever we might pretend, are in reality right here in the United States? The answer is that the Constitution does not authorize arbitrary detention. And the reason that is so is simple: Freedom from arbitrary detention is as ancient and important a right as any found within the Constitution's boundaries. *See Zadvydas*, *supra*, at 720-721 [] (Kennedy, J., dissenting) ("inadmissible aliens" who are "stopped at the border" are "entitled to be free from detention that is arbitrary or capricious").

583 U.S. at 331-32 (emphasis in original).

Additionally, on remand from *Jennings*, the Ninth Circuit Court of Appeals found that the Supreme Court had chosen "to answer only the question whether the *statutory text itself* included a limit on prolonged detention or a requirement of individual bond hearings." *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018) (emphasis added).[1]

---

[1] The *Rodriguez* panel described the Supreme Court's ruling in *Jennings* as follows:
In *Jennings v. Rodriguez*[] 138 S. Ct. 830 [] (2018), the Supreme Court held that we misapplied the canon of constitutional avoidance to hold that certain

Citing the United States Supreme Court's opinion in *United States v. Salerno*, 481 U.S. 739, 755 (1987), the Ninth Circuit stressed that "[a]rbitrary civil detention is not a feature of our American government," and expressed "grave doubts that any statute that allows for *arbitrary* prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Id.* at 256 (emphasis added).

The district court's conclusion in *Padilla v. U.S. Immigration and Customs Enforcement*, is persuasive with regard to the applicability of *Thuraissigiam* in this context:

> The Court stands unconvinced that the Supreme Court's decision in *Thuraissigiam* requires dismissal of Plaintiff's due process claim. Given the distinct claims presented in *Thuraissigiam*, the Court finds the decision's narrow holding presents no bar to Plaintiffs' claim.
>
> In *Thuraissigiam*, the respondent argued that due process entitled him to an opportunity to *reapply* for asylum on account of certain alleged defects he identified in the process that led to rejection of his asylum application. [591 U.S. at 138-140]. To understand this claim, the Court first reviews the factual background and procedural posture of the case. Like Plaintiffs in the case before this Court, the respondent in *Thuraissigiam* was placed into expedited removal proceedings after being detained upon his entry to the United States where he was found inadmissible. *Id.* at [114]. Like Plaintiffs here, the respondent applied for asylum. *Id.* But unlike Plaintiffs here, the respondent in *Thuraissigiam* was unable to convince the immigration officer, a supervising officer, or immigration judge that he faced a credible fear of persecution if returned to his home country. *Id.* at [114]. Having failed to present a bona fide asylum claim, the respondent was subject to "remov[al] from the United States without further hearing or

---

immigration detention statutes, namely 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), implicitly contain a reasonableness determination after which due process concerns require that persons in prolonged mandatory detention are entitled to individualized bond hearings and possibly, conditional release. Although the Court sought and received briefing on the straightforward constitutional question, i.e. without the implicit requirement of due process for persons in arbitrary prolonged detention, whether these detention statutes are constitutional, *it declined to reach the constitutional question. The Court instead chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond hearings*.

*Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018) (emphasis added).

review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I); *Thuraissigiam*, [591 U.S. at 114]. The respondent then filed a habeas petition through which he sought a writ of habeas corpus, an injunction, or writ of mandamus directing the Department of Homeland Security to provide him a "new opportunity to apply for asylum and other applicable forms of relief." *Thuraissigiam*, [591 U.S. at 114–15]. He argued that he had been deprived of a meaningful opportunity to establish his credible fear claims and that the wrong standards were applied. *Id.* But *the respondent "made no mention of release from custody.*" *Id.*

The Supreme Court in *Thuraissigiam*, rejected respondent's due process claim. The Court explained that "aliens who arrive at ports of entry ... are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* at [139] (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). And as to any due process rights concerning their efforts to gain admission, these individuals possess "only those rights regarding *admission* that Congress has provided by statute." *Id.* at [140]. The Court based this conclusion on the proposition that "[t]he power to admit or exclude aliens is a sovereign prerogative" and that "the Constitution gives the political department of the government plenary authority to decide which aliens to admit, and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Id.* at [139] (citation and quotation omitted). With these principles in mind, the Court held that as to his request for admission into the United States, the respondent had only "a right to a 'determin[ation]' whether he had 'a significant possibility' of 'establish[ing] eligibility for asylum.'" *Id.* at [140] (quoting 8 U.S.C. §§ 1225(b)(1)(B)(ii), (v)). Having been "given that right," the respondent was entitled to no more process in his efforts to gain admission to the United States. *Id.*

704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023) (emphasis added), *appeal filed*, No. 24-2801 (9th Cir. May 2, 2024),[2] *quoted in Doe v. Andrews*, No. 25-cv-0333, 2026 WL 797694, at *8 (E.D. Cal. Mar. 23, 2026). In *Doe*, the court concluded:

… [Respondents] ask the Court to extract from *Thuraissigiam* a broad rule that any inadmissible noncitizen possesses only those due process rights afforded to them by statute, regardless of the nature of their status or the relief they seek. But such conclusion is untethered to the claim in *Thuraissigiam* and the Court's reasoning. *Thuraissigiam's discussion of due process is necessarily constrained to challenges to admissibility to the United States*. This was the sole claim presented and [Thuraissigiam]

_____

[2] Oral argument in *Padilla* was heard May 21, 2025, before Judges Berzon, Friedland, and Mendoza.

expressly asked for a chance to *reapply* for asylum and admission. The Court then exclusively analyzed whether a noncitizen applicant for admission has any "rights regarding *admission*" beyond those set by Congress. …

2026 WL 797694, at *9 (emphasis added, some internal quotations omitted). *See also Fils-Aime*, 808 F. Supp. 3d at 223;[3] *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1110 (S.D. Cal. 2025);[4] *Golloo v. Akshar*, No. 26-cv-401, 2026 WL 1110266, at *4-6 (N.D.N.Y. Apr. 24, 2026).

Absent the availability of § 2241 relief, Petitioner and similarly situated individuals could be indiscriminately detained for an indeterminate, and lengthy, period of time. This does not conform to the Constitution's guarantee of due process to individuals present in the United States of America. A majority of the federal district

---

[3] The complete passage, selectively quoted by the [the government], states that "an alien in [Thuraissigiam's] position has only those rights regarding *admission* that Congress has provided by statute ... [b]ecause the Due Process Clause provides nothing more, it does not require review of that determination or how it was made." 591 U.S. at 140 [] (emphasis added). *Thuraissigiam's* rationale is based on the executive's "plenary authority to decide which aliens to admit, and [the] concomitant ... power to set the procedures to be followed in determining whether an alien should be admitted." *Id.* at 139 [] (internal citations omitted). The holding circumscribed only due process rights to challenge admission decisions—in the case of the *Thuraissigiam* petitioner, denial of his asylum application—and left open due process challenges to prolonged detention. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever.") …
*Fils-Aime v. FCI Berlin, Warden*, 808 F. Supp. 3d 218, 223 (D.N.H. 2025).

[4] Following the Supreme Court's decision in *Thuraissigiam*, some district courts have adopted Respondents' reasoning to dismiss or deny habeas petitions in the context of arriving aliens subject to mandatory detention under Section 1225(b)(1). *See Petgrave v. Aleman*, 529 F. Supp. 3d 665, 669 (S.D. Tex. 2021) ("As far as Petitioner is concerned, whatever procedure Congress has authorized is sufficient due process."); *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 336 (W.D.N.Y. 2021) ("Petitioner is on the threshold of initial entry into the United States and [] he accordingly is not entitled to procedural protections beyond those provided by statute.").
Most courts have ruled otherwise. …
*Gao v. LaRose*, 805 F. Supp. 3d 1106, 1110 (S.D. Cal. 2025).

courts that have considered the question have concluded that, at some point, prolonged detention under § 1225(b), without an individualized bond hearing, becomes unreasonable and violates the detainee's right to due process. *See*, *e.g.*, *Rash v. LaRose*, ___ F. Supp. 3d ___, No. 26-cv-0008, 2026 WL 249324, at *3 (S.D. Cal. 2026); *Larrazabal-Gonzalez v. Mason*, ___ F. Supp. 3d ___, No. 26-cv-00049, 2026 WL 221706, at *5 (S.D.W. Va. 2026) ("The Constitution does not tolerate what would be plainly unlawful in the criminal context simply because the detention is labeled civil. Nor does the Constitution withhold its protections when a person is an immigrant."); *Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) ("This Court agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Fils-Aime*, 808 F. Supp. 3d at 224; *Rashid v. Trump*, 807 F. Supp. 3d 349, 363 (D. Vt. 2025); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116-17 (W.D. Wash. 2019) ("prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process."); *Leonteva v. Noem*, No. 26-cv-00043, 2026 WL 711766, at *5 (S.D. Ind. Mar. 13, 2026); *Mashchenko v. Rokosky*, No. 25-cv-12387, 2026 WL 185204, at *3 (D.N.J. Jan. 25, 2026); *Rodriguez Chavez v. Holman*, No. 25-cv-00267, 2026 WL 136902, at *3 (W.D. Pa. Jan. 20, 2026); *Maksin v. Warden, Golden State Annex*, No. 25-cv-00955, 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 25-cv-00098, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025).

Accordingly, it is respectfully recommended that the Court join the federal District Courts that have concluded prolonged mandatory detention pending the finality of removal proceedings, without a bond hearing, at some point violates the detainee's right to due process of law. *See Tavurov v. Noem*, ___ F. Supp. 3d ___, 2026 WL 323054,

at *4 (W.D. Wash. Feb. 6, 2026); *Tenemasa-Lema v. Hyde*, 810 F. Supp. 3d 244, 256 n.18 (D. Mass. Nov. 25, 2025); *Gao*, 805 F. Supp. 3d at 1100; *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825-26 (W.D. Pa. 2025); *Leke v. Hott*, 521 F. Supp. 3d 597, 603 n.8 (E.D. Va. 2021);[5] *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 851 (E.D. Va. 2020) ("[S]ome constitutionally adequate process must be provided; and the Court concludes, based on *Zadvydas*, *Demore*, and *Thuraissigiam*, that Petitioner is not foreclosed from the relief he seeks with respect to his detention either because he is an entering alien, as opposed to an entered alien, or because there remains a discernable statutory purpose for his detention."); *Kydyrali*, 499 F. Supp. 3d at 772; *Abdi v. Duke*, 280 F. Supp. 3d 373, 393 (W.D.N.Y. 2017) ("The majority of the courts in this Circuit that have considered the issue agree, and this Court finds their reasoning ... persuasive. Section 1225(b) does not permit the indefinite detention of individuals detained under that statute."); *Mashchenko*, 2026 WL 185204, at *3; *Baishymyrov v. Warden of Golden State Annex Det. Facility*, No. 25-cv-01658, 2026 WL 145644, at *6 (E.D. Cal. Jan. 20, 2026); *Sufiiarov v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-03265, 2026 WL 26079, at *3 (S.D. Cal. Jan. 5, 2026) ("The Court agrees with those courts that have found a noncitizen detained under

---

[5] In support of this conclusion, in *Leke* at footnote 8 the Eastern District of Virginia cites the following cases:

> *See also Kouadio v. Decker*, 352 F. Supp. 3d 235, 241 (S.D.N.Y. 2018) (34-month detention of arriving alien without bond hearing violates due process); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772, No. 3:20-cv-539 (S.D. Cal. 2020) (27-month detention of arriving alien without bond hearing violates due process); *Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) (23-month detention of arriving alien without bond hearing violates due process); *Mbalivoto v. Holt*, No.1:20-cv-827 at 5 (Dkt. 22) (E.D. Va. Aug. 11, 2020) (22-month detention of arriving alien without bond hearing violates due process); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019) (19-month detention of arriving alien without bond hearing violates due process); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442–43 (D. N.J. 2019) (same); *Djelassi v. ICE Field Office Dir.*, 434 F. Supp. 3d 917, 930 (W.D. Wash. 2020) (18-month detention of arriving alien without bond hearing violates due process); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1177 (W.D. Wash. 2019) (17-month detention of arriving alien without bond hearing violates due process); *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (10-month detention of arriving alien without bond hearing violates due process).

§ 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process."); *Arechiga v. Archambeault*, No. 23-cv-0600, 2023 WL 5207589, at *3 (D. Nev. Aug. 11, 2023); *Bermudez Paiz v. Decker*, No. 18-cv-4759, 2018 WL 6928794, at *10 (S.D.N.Y. Dec. 27, 2018) ("Most judges who have squarely faced the question have applied the same logic to § 1225(b), holding that arriving aliens, like criminal aliens, cannot be detained for an unreasonably prolonged period of time without a bond hearing."). *Contra Petgrave v. Aleman*, 529 F. Supp. 3d 665, 667 (S.D. Tex. 2021); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 579 (W.D.N.Y. 2021); *Richards v. Choate*, No. 25-cv-031342025 WL 4474703, at *6 (D. Colo. Dec. 5, 2025); *Mendoza-Linares v. Garland*, No. 21-cv-1169, 2024 WL 3316306, at *2 (S.D. Cal. June 10, 2024).

The Ninth Circuit Court of Appeals has not provided the lower courts with guidance regarding the point at which an immigration detainee's prolonged mandatory detention under § 1225(b) without a bond hearing becomes unconstitutional. The District Courts within the Ninth Circuit's jurisdiction have generally found the test stated in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) applicable with regard to those detained pursuant to § 1225(b), *see*, *e.g.*, *Prabhpreet v. Larose*, 26-cv-393, 2026 WL 310192, at *3 (S.D. Cal. Feb. 5, 2026), although some courts have instead applied the test stated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), *see*, *e.g.*, *Tigranyan v. Warden of Cal. City Det.*, No. 25-cv-01554, 2026 WL 91765, at *5-7 (E.D. Cal. Jan. 13, 2026), which has often been applied in situations involving detention under § 1226(c). Under either test, Petitioner is entitled to a bond hearing to determine whether he would be a flight risk or a danger to the community if released from detention.

The *Banda* court considered the following six factors to determine whether continued detention under § 1225(b) without a bond hearing violated the detainee's due process rights:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings

caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

385 F. Supp. 3d at 1118, *citing Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019). *See also Sadeqi*, 809 F. Supp. 3d at 1094; *Kydyrali*, 499 F. Supp. 3d at 773-74; *Prabhpreet*, 2026 WL 310192, at *2-3; *Amado v. United States Dep't of Just.*, No. 25-cv-2687, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025); *Kadir v. LaRose*, 25-cv-1045, 2025 WL 2932654 (S.D. Cal. Oct. 15, 2025).

With regard to the total length of detention to date, Petitioner has now been detained for seventeen months. Although the length of Petitioner's detention does not, by itself, establish prolonged detention in violation of due process, neither does that length of detention insulate Petitioner's case from constitutional review. The federal district courts have ordered a bond hearing where a petitioner was subject to mandatory detention for a shorter length of time. *See*, *e.g.*, *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) ("Petitioner has been in immigration detention ... approximately one year. District court have found shorter lengths of detention ... without a bond hearing to be unreasonable.") (collecting cases); *Amado*, 2025 WL 3079052, at *5 ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable.") (collecting cases); *Tonoyan v. Andrews*, No. 25-cv-00815, 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period ... qualifies as prolonged."); *Gao*, 805 F. Supp. 3d at 1112 ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."). The Court may reasonably conclude that the first *Banda* factor weighs in favor of Petitioner.

The second *Banda* factor evaluates the potential duration of future detention. It may take as long as a year for the BIA to reach a decision regarding the IJ's denial of asylum. Additionally, should Petitioner exercise his right to appeal any negative decision by the BIA to the Ninth Circuit Court of Appeals, a decision from the appellate court

could take up to two years. *See Banda*, 385 F. Supp. 3d at 1119 (finding this factor weighed in the petitioner's favor where a petitioner who had "only recently" appealed the IJ's denial of his case to the BIA faced a process that could "take up to two years or longer"); *Barraza v. ICE Field Off. Dir.*, No. 23-cv-1271, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted*, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) (citing the Ninth Circuit Court of Appeals website's timeline for appeals and noting a petitioner who filed their petition for review in the Ninth Circuit a few months prior could be facing two years or more of additional time in custody);[6] *Hong v. Mayorkas*, No. 20-cv-1784, 2021 WL 8016749, at *4 (W.D. Wash., June 8, 2021) (finding this factor favored petitioner because they faced "an additional 15 to 38 months" in detention where they were at the "earliest stages" of pursuing a petition for review before the Ninth Circuit Court of Appeals). Under the government's theory of mandatory detention pending finality of an order of removal, and given the current flood of cases before the BIA and the Ninth Circuit Court of Appeals, Petitioner might potentially be detained for an additional one or two years pending the final outcome of his removal proceedings. Therefore, the second *Banda* factor also weighs in favor of Petitioner.

The third factor to be considered examines the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger the argument that [the noncitizen] is entitled to a bond hearing." *Barraza*, 2023 WL 9600946, at *6 (internal quotations omitted). Petitioner is detained at the San Luis Regional Detention Center, which houses both immigration detainees and criminally-sentenced individuals. The conditions under which Petitioner is detained closely resemble penal confinement. Petitioner is not able to come and go from the detention center. Visitation is limited and visitors are searched. Inmate mail is screened.

---

[6] At this time the Ninth Circuit advises that a civil appeal can take six to twelve months from the date the notice of appeal is docketed to being set for oral argument, with another three months to a year before a decision is issued, or four months from the time an appeal is briefed until a decision is made if oral argument is not ordered. *See* https://www.ca9.uscourts.gov/general/faq, *last visited* April 27, 2026.

- 12 -

The detention center determines when Petitioner is able to exercise, what he may eat, and what belongings he may possess. The Court may reasonably conclude that the third *Banda* factor weighs in favor of Petitioner.

The fourth and fifth *Banda* factors examine the delays in the removal proceedings caused by the detainee and delays in the removal proceedings caused by the government. There is no evidence that Petitioner has engaged in any delay of his proceedings other than by appealing the IJ's denial of asylum and withholding of relief from removal to the BIA, which he has a right to do. There is no indication that the government has caused any delay in Petitioner's proceedings. Accordingly, these two factors are neutral.

The sixth prong of the *Banda* test considers the likelihood that Petitioner's removal proceedings will result in a final order of removal. In considering the "likelihood that the removal proceedings will result in a final order of removal," the court considers "whether the noncitizen has asserted any defenses to removal." *Banda*, 385 F. Supp. at 1120 (citations omitted). Where the petitioner has asserted a good faith challenge to removal, "the categorical nature of the detention will become increasingly unreasonable." *Id.* (internal quotations omitted), *cited in Kadir*, 2025 WL 2932654, at *5. Petitioner appears to have asserted a good faith challenge to removal and therefore this factor weighs in favor of Petitioner.

Notably, one of the *Matthews* factors is consideration of "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement," i.e., a bond hearing, "would entail." 424 U.S. at 335. The government's interest in Petitioner's detention is to ensure that Petitioner appears for all of his immigration proceedings, i.e., that he is not a flight risk, and that he is not a danger to the community. Petitioner has not committed any crime, faces no charges, and did not attempt to avoid inspection when he appeared at a port of entry, indicating respect for the laws of the United States. Petitioner appeared for inspection with the hope of admission and the express acquiescence of the government via the CBP process. Petitioner has a sponsor (an Orthodox priest) in the United States

(ECF No. 1 at 37), who will ensure that he does not become an economic burden on the state.

Having determined that a bond hearing is required, the question of who bears the burden of proof at a bond hearing in the context of § 1225(b) detention should be answered. This is not a question clearly resolved by the federal courts at this time. The Supreme Court has stressed that "due process is flexible" and "calls for such procedural protections as the particular situation demands." *Jennings*, 583 U.S. at 314, 138.

Some district courts within the Ninth Circuit have concluded that at bond hearings involving those detained for a prolonged period of time pursuant to § 1225(b), without an individualized finding of whether they should be released on bond pending the finality of their removal proceedings, the government bears the burden of establishing the detainee should not be released on bond because they are a flight risk and/or a danger to the community. *See Gao*, 805 F. Supp. 3d at 1112; *Chenghong Xie v. Larose*, No. 3:26-cv-01116, 2026 WL 836351, at *2 (S.D. Cal. Mar. 26, 2026); *Sadeqi*, 809 F. Supp. 3d at X; *Kadir*, 2025 WL 2932654, at *6; *Idiev v. Warden of the Golden State Annex Det. Facility*, No. 25-cv-01030, 2025 WL 3089349, at *6 (E.D. Cal. Nov. 5, 2025) (ordering bond hearing where "the government must justify Petitioner's continued confinement under § 1225(b) by clear and convincing evidence that Petitioner is a flight risk or a danger to the community"). The Court could, therefore, join these courts and apply the "general principles of procedural due process," i.e., place the burden of establishing the elements warranting detention on the government rather than requiring Petitioner to prove those elements in the negative. *See Fils-Aime*, 808 F. Supp. 3d at 224; *Sandesh v. LaRose*, No. 26-cv-0846, 2026 WL 622690, at *5 (S.D. Cal. Mar. 5, 2026), *citing*, *e.g.*, *Banda*, 385 F. Supp. 3d at 1120; *Belqasim v. Bostock*, No. 25-cv-01282, 2025 WL 3466971, at *10 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted*, 2025 WL 3170929 (Nov. 13, 2025). *See also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 n.4 (9th Cir. 2022) (Wardlaw, J., dissenting, discussing the equities of placing the burden on the government in the context of detention under § 1226); *Gao*, 805 F. Supp. 3d at 1112; *A.E.*

*v. Andrews*, No. 25-cv-00107, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) (recommending that "Respondent be ordered to provide Petitioner with a bond hearing before an immigration judge at which Respondent must justify Petitioner's continued detention by clear and convincing evidence" in the context of detention pursuant to § 1225(b) that the court found had become unreasonably prolonged). The Court could also order that in the event Petitioner is determined to not be a danger to the community and to not be a flight risk, the IJ must consider Petitioner's financial circumstances or alternative conditions of release when determining any bond. *See Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017) ("Plaintiffs are likely to succeed on their challenge under the Due Process Clause to the government's policy of allowing ICE and IJs to set immigration bond amounts without considering the detainees' financial circumstances or alternative conditions of release."); *Black v. Decker*, 103 F.4th 133, 138 (2d Cir. 2024) (The district court "correctly directed the immigration judge ("IJ"), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

### IV.     Conclusion

Petitioner's detention for seventeen months without a bond hearing, under the circumstances and equities of this case, has become unreasonable and violates Petitioner's Fifth Amendment right to due process of law. Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents must justify his continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released.

Accordingly,

**IT IS RECOMMENDED that** the petition for habeas relief pursuant to § 2241 (ECF No. 1) be **granted**, and the Court order Petitioner be released or that within seven (7) days of the date the petition is granted Petitioner be given a bond hearing before a neutral adjudicator at which hearing the government must bear the burden of showing that Petitioner should not be released on bond because he is a flight risk and a danger to

the community. If the Court orders a bond hearing it should further order that the adjudicator prepare a written, explained decision, rather than checking boxes on a form, describing the clear and convincing evidence proffered by the government that the immigration court considered when reaching the decision.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. Rule 72(b), Federal Rules of Civil Procedure, provides that the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Pursuant to Rule 7.2(e)(3) of the Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed ten (10) pages in length. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. *See United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 7th day of May, 2026.

Camille D. Bibles
United States Magistrate Judge